UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

MICHAEL R. HAMLIN,      )
                                 )
        Plaintiff       )
                                 )
v.                         )    Civil No. 05-191-P-K
                                 )
PINE STATE TOBACCO AND   )
CANDY CO. AND JOHN DOE,  )
                                 )
                                 )
       Defendants     )

### *Memorandum of Decision[1] on Motion for Summary Judgment*

Michael Hamlin, formally an inmate at the Maine State Prison, in Warren, Maine, is currently incarcerated at the Maine Correction Center, in Windham, Maine.  He filed suit against Pine State Tobacco and Candy Company and its president in state court and that action was removed to this federal forum by the defendant.  Pine State Tobacco and Candy Company has a contract with the Maine Department of Correction to sell products to both facilities.  Hamlin's complaint pleads five counts:  Count I, unfair trade practice; Count II, extortion; Count III, monopolizing; Count IV, consumer protection; and Count V, emotional distress.  Pine State Tobacco and Candy Company[2] has moved for summary judgment (Docket No. 20) and, based on the summary judgment record in front of me and for the following reasons, I grant the motion as to all counts.

---

[1]     Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge Margaret J. Kravchuk conduct all proceedings in this case, including trial, and to order entry of judgment.

[2]     I refer to Pine State as the sole defendant in this memorandum.  Pine State also discusses why summary judgment should be granted in favor of Pine State's president, Paul W. Cottrell, Jr.  (Mot. Summ. J. at 12-13.)  Hamlin does not contest this argument and, even assuming that the naming of John Doe was sufficient to state a claim against Cottrell, Cottrell is entitled to judgment for the reasons stated below.

### *Summary Judgment Standard*

Pine State is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if its resolution would "affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and the dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id.   I review the record in the light most favorable to Hamlin and I indulge all reasonable inferences in his favor.  See Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir.2000) (emphasis added).

The fact that Hamlin is a pro se plaintiff does not free him from the pleading burden set forth in Rule 56.  See Parkinson v. Goord, 116 F.Supp.2d 390, 393 (W.D.N.Y.2000) ("[P]roceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment."); see also Sirois v. Prison Health Servs., 233 F.Supp.2d 52, 53-55 (D. Me. 2002).   While Hamlin's complaint may be held to a less stringent pleading standard under Haines v. Kerner, 404 U.S. 519, 520 (1972), his pro se status does not shield him from Rule 56's operative provision under subsection(e) requiring the pleader to "set forth such facts as would be admissible in evidence."

 Subsection (c) of the District of Maine Local Rule provides:

A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The

> opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by subsection (e) of this rule.

Subsection (e) directs:

> Statement of Facts Deemed Admitted Unless Properly Controverted; Specific Record of Citations Required
>
> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

Dist. Me. Loc. R. 56(e).

### *Material Facts*

Michael Hamlin is a prisoner at the Maine Correctional Center ("MCC") in Windham, Maine. He has been a prisoner in the Maine Department of Corrections ("DOC") system since 1996, and will remain a prisoner of the DOC until December 2008. Hamlin was housed at the Maine State Prison ("MSP") in Warren, Maine, from March 20, 2002, through May 25, 2005. (Def.'s SMF ¶ 1; Pl.'s Resp. SMF ¶ 1.)  Pine State Trading Co. ("Pine State") is a food and beverage business with a principal place of business in Augusta, Maine. (Def.'s SMF ¶ 2; Pl.'s Resp. SMF ¶ 2.)

On or about October 2001, the DOC issued a "Request For Proposal" ("RFP") to operate vending machines at MSP in Warren, Maine and MCC in Windham, Maine. The DOC determined the winning bid.  The RFP set forth the requirements and qualifications

for bidders.  Bidders were required, in Section III of the RFP, to submit their proposals to Karen Carroll, who was designated as the DOC's "Agreement Administrator." (Def.'s SMF ¶ 3; Pl.'s Resp. SMF ¶ 3.) Section XI of the RFP set the DOC requirements for pricing of products. Section XI of the RFP requires that the winning bidder sell products "at regulated prices by the [DOC]."[3]  Under Section XI, "additional product types, and price require advanced approval of the [DOC]." The December 1, 2001, contract incorporates by reference the requirements of the RFP. (Def.'s SMF ¶ 4.)[4]

Pine State submitted a proposal to the DOC in response to the RFP.  After competitive bidding, the DOC awarded Pine State the contract to operate vending machines at MSP and MCC for a three-year period, commencing on December 1, 2001, through December 1, 2004.  (Def.'s SMF ¶ 5; Pl.'s Resp. SMF ¶ 5.)  The DOC later amended the contract to extend the termination date of the contract up to and including June 30, 2006.  (Def.'s SMF ¶ 6; Pl.'s Resp. SMF ¶ 6.)

According to Pine State, the contract permits Pine State to place vending machines at MCC and MSP for use by inmates.  Separate vending machines are available for DOC personnel and Pine State charges the same prices to DOC personnel at MCC and MSP as it does to inmates.  (Def.'s SMF ¶ 7.)  Hamlin describes Paragraph 7 of Pine State's statement of fact as misleading and as an effort to persuade the court that the same products/items are available to inmates and correctional staff at the same price.  (Pl.'s Resp. SMF ¶ 7.)  He asserts that it cost him $3.75 for a four ounce bag of Maxwell House

---

[3]     This phrasing does not make much sense but it is how the undisputed fact is propounded.
[4]     Hamlin responds to Paragraph 4 of the defendant's statement of facts by indicating that he agrees with and disputes the paragraph.  (Pl.'s Resp. SMF ¶ 4.)  He argues that the DOC has approved the prices "set" by Pine State but argues that there is no justification for setting the prices at the level set.  (Id.)  He asserts that this paragraph is an admission that there is a conspiracy between Pine State and DOC to deprive Hamlin of his hard earned cash and contends that Pine State is attempting to lay the blame for the price gouging on the DOC.  (Id.)  While this response reveals Hamlin's theory of his case it does not controvert the factual statement made by Pine State.

4

coffee at MSP and he now pays only $2.63 for the same item at MCC. (Compl. ¶¶ 9, 11,

16 & 22.)[5]   He also asserts that Pine State sold him microwave popcorn for 75 cents at

MSP which was marked, "This item is not packaged for individual resale." (Compl.

¶ 37.)  Hamlin relays that he worked as a kitchen cook at MSP and in that capacity he

supplied the officers' kitchen with food.   In the officers' dining area Hamlin personally

viewed the vending machines and the machines he saw that only the correctional officers

had access to did not contain the coffee or the microwave popcorn.  (Hamlin Decl. ¶ 3.)

---

[5]       In the affidavit supporting his complaint Hamlin also averred that he bought 38 packages of
Folgers Coffee for $13.30 at MSP and paid only $8.90 for that same product at MCC.  (Hamlin Aff. ¶ 5.)
He also swore that he paid $1.50 for 16 Lipton Tea bags at MSP and paid only $1.09 for this product at
MCC.  (Id. ¶ 6.)  However, Hamlin has not placed these factual allegations in the summary judgment
record and Pine State has had no way to respond to these assertions in the context of the summary judgment
exchange.
        Paragraph 2 of Hamlin's declaration – filed in response to the motion for summary judgment --
does have a wholesale cite to this affidavit but such a non-specific reference in an already non-conforming
pleading (to the extent that this declaration is meant as a statement of additional fact) does not place a
burden on Pine State to admit, deny, or qualify all the representations in Hamlin's complaint-accompanying
affidavit.  (Although helpful to the Court, Pine State's paragraph-by-paragraph response to Hamlin's
declaration is not required under the pleading standards for summary judgment. To the extent that Pine
State's pleading at Docket No. 29 is an objection to Hamlin's declaration  the objection is overruled
because, as I have considered this declaration in such a limited manner and my consideration was tempered
by Pine State's response, there is no prejudice to Pine State.)
        In Paragraph 2 of his declaration Hamlin also references his itemization of priced differentials on
ten items sold at MCC and MSP.   (Compl. Ex. C. Attach., Docket No. 1.)  In its response to the
declaration, Pine State concedes that six of the entries are accurate representations of the prices for the
items in the vending machines at MSP.  (Resp. Hamlin Decl. ¶ 2.)  It denies, without record support, the
other prices signified by Hamlin.  Had Hamlin integrated this exhibit into the summary judgment record he
would be able to attest that he purchased these items at the listed prices and it would be incumbent on Pine
State to properly controvert this.  I do note that even if I credited the veracity of the prices noted by Hamlin
in this list my conclusion as to the merits of Hamlin's claims would be unaltered.
        While on the subject of this declaration, Pine States qualifies Paragraph 1 of the Hamlin
Declaration but Hamlin does not cite to those paragraphs in his responsive statement of fact. In his
memorandum responding to the motion for summary judgment Hamlin does cite to Paragraph 1 of his
declaration which states that prisoners routinely refer to Pine State's vending machines as their
"Commissary" or "Canteen" purchases as it is the only place at the MSP that prisoners can make food
purchases.  (Hamlin Decl. 1.)  Pine State objects to the declaration, indicating that it admits that it does not
sell food through the MSP canteen (which, the parties agree) sells items such as shampoo and razors, but
denies that its MSP vending machines are referred to as the "Commissary" or "Canteens."  Hamlin argues
that Pine State is attempting to "make a play on words to mislead this court" and contends that "it would be
a grave injustice to award the defendants a motion for summary judgment[] just because the plaintiff called
the defendants 'vending machine' business at MCC and MSP 'commissary' or 'canteen'." (Pl.'s Resp. Mem.
at 1-2.)  Hamlin can rest assured that this semantic tussle  -- and Pine State does, unbecomingly, try to
exploit Hamlin's word choice --  is in no way determinative of my judgment as to the substantive merits of
this summary judgment motion.

Pine State points out that it does not assert that in each case it sold the same items to inmates and correctional officers.  (Def.'s Resp. Hamlin Decl ¶ 3.)

Pursuant to the contract, the prices of items in the vending machines must be pre-approved by the DOC either at the onset of the contract period or whenever additional or new items are introduced for sale. (Def.'s SMF ¶ 8.)[6]  On average, Pine State's prices for items in the vending machines at MCC and MSP are competitive with prices in the retail market. (Def.'s SMF ¶ 9; Farrington Aff. ¶ 3; Def.'s Resp. Hamlin Decl. ¶ 5.)   Hamlin retorts that Pine State should be required to offer proof that a four ounce bag of Maxwell House coffee goes for $3.75 on the retail market.  (Pl.'s Resp. SMF ¶ 9.) He believes that the fact that this size bag of coffee goes for $2.63 at MCC demonstrates a price differential that "is far from competitive with prices in the retail market."  (Hamlin Decl. ¶ 5.)

There is no dispute that the DOC also allows Pine State to sell "bulk" items to inmates at MSP and that in order to purchase such "bulk" goods at MSP, inmates must submit a "Bulk Order Form" to Pine State ordering the goods they desire.  By using the "Bulk Order Form," MSP inmates can order larger quantities of certain goods that are sold in the vending machines, such as cookies, pastries, candy bars and snacks.  MSP inmates must buy a minimum quantity of each bulk order product.  (Def.'s SMF ¶ 10; Pl.'s Resp. SMF ¶ 10.)   Like vending machine items, the prices of bulk goods offered for sale by Pine State at MSP are pre-approved by the DOC at the onset of the contract or whenever additional or new items are introduced for sale. The unit prices for "bulk" items

---

[6]        Hamlin "agrees and disputes" this paragraph by indicating that he concedes that the DOC approved the prices set by Pine State apropos the MCC and MSP vending machines; he counters that the fact that the DOC approved the prices does not mitigate the fact that his consumer rights have been violated.  (Pl.'s Resp. SMF ¶ 8; Hamlin Decl. ¶ 4.)  This is a legal conclusion that is for the Court to make when analyzing the material facts in light of the applicable legal standards.

at MSP are the same as the individual unit prices in the vending machines at MSP. (Def.'s SMF ¶ 11.)[7]

Pine State did not make, type, produce, print, or contribute to the making of the MCC "MPU Commissary List." (Def.'s SMF ¶ 12; Farrington Aff. ¶ 5.)[8] Pine State only sells food and beverage items to inmates at MCC through its vending machines; Pine State does not offer the food or beverage items, or set the prices, of the items listed in the "MPU Commissary List." Pine State does not operate the "MPU Commissary," and does not sell any food goods at the Commissary at MCC. (Def.'s SMF ¶ 13.)[9] Pine State does not offer "bulk sales" to inmates at MCC. (Id. ¶ 14.)[10]

According to Pine State it did not operate, run, control, or set prices for any food and beverage items sold at the MSP "Canteen" in Warren, Maine, or the MCC "Commissary" in Windham for the period of March 20, 2002, through May 25, 2005. Pine State does supply certain non-food items, such as personal hygiene products that are

---

[7]        In responding to this paragraph Hamlin invites the Court to conclude that there is a price gouging conspiracy between Pine State and the DOC that violates his consumer protection rights.  (Pl.'s Resp. SMF ¶ 11; see also  id. ¶¶ 4 & 8.)

[8]        Hamlin concedes that he does not have sufficient knowledge to controvert Paragraph 13 of Pine State's statement of material fact, but he asserts that the integrity of the Farrington affidavit upon which Pine State relies is questionable at best because Pine State has not offered sufficient proof that they offer four ounce bags of Maxwell House Coffee on the retail market for $3.75.  (Pl.'s Resp. SMF ¶¶ 9 & 12.)  I disagree that Farrington's affidavit is suspect.

[9]        Hamlin disputes this paragraph arguing that the defendant is trying to mislead the court by subterfuge.  (Pl.'s Resp. SMF ¶ 13.)  Hamlin contends that every food item purchased at the MCC commissary window was supplied by Pine State Trading Company, some are sold retail and some wholesale.  (Id.)  On this score, Hamlin claims to have "first hand" knowledge that Pine State Trading Company supplies MCC with perishable food items at wholesale prices.  (Hamlin Decl. ¶ 6; Carroll Aff.)  Hamlin argues that Pine State Tobacco and Candy Company is a division of Pine State Trading Company which is a division of Pine State Vending Company – all of which use one federal tax identification number -- and asserts that the defendant is trying to play one business off the other.  (Hamlin Decl. ¶ 6; Def.'s Resp. Interrogs. ¶¶ 14&15.)  Hamlin's own declaration is not admissible record evidence concerning the legal status and interrelationship between these entities.  Hamlin cites to the response to his interrogatories to support the conclusion that Pine State Tobacco and Candy Company is a division of Pine State Trading Company but the answer makes no mention of the relative status of Pine State Vending Company. (Def.'s Resp. Interrogs. ¶¶ 14&15.)  As the discussion below demonstrates, on the record before me the question of the status of Pine State Trading Company relative to the other two Pine State entities is not dispositive of any of Hamlin's claims.

[10]        Hamlin indicates that he is bereft of sufficient knowledge to admit or deny this statement and defaults to a denial.  (Pl.'s Resp. SMF ¶ 14.)

not sold in vending machines, to the "Canteen" at MSP.  (Id. ¶ 15.)  Pine State does not

set the retail prices of food items sold to inmates at the MSP "Canteen."  The DOC sets

the sales prices and the methods of sale of food and beverage goods sold at the MSP

"Canteen." (Def.'s SMF ¶ 16.)  Pine State does not sell any of the food items listed in

Hamlin's "Exhibit C" to inmates at the MSP "Canteen," nor did it sell any of those food

and beverage items to inmates at MSP "Canteen" during the period from March 20, 2002,

through May 25, 2005.  Pine State does offer certain of those items at MSP in its vending

machines or via its "Bulk Order Form." (Id. ¶ 17.)  Pine State did not sell any of the food

items listed in Hamlin's "Exhibit C" to inmates at the MCC "Commissary" during the

period from March 20, 2002, through May 25, 2005, and did not offer bulk sales to

inmates at MCC during that period.  (Id. ¶ 18.)

   Hamlin qualifies these representations by protesting that Pine State is only

admitting that it does not operate run, control, or set prices for food and beverage items

sold at the MCC commissary at Windham but it never denies the fact that its sells MCC

food and beverage.  (Pl.'s Resp. SMF ¶¶ 15 & 18; Hamlin Decl. ¶ 6.)  He further states

that there is only one canteen at the MSP, which sells food and beverage, known as the

vending machine canteen.  And there is a MSP commissary which does not offer food or

drink but offers razor, shampoo, and the like.  (Id. ¶¶ 16 & 17; Hamlin Decl. ¶ 7.)[11]

   With respect to the labeling issue, Pine State states that it often purchases food

items for its vending machines and for bulk sales in large lots from various vendors.

Some of these lots contain individual food items that are specifically intended for sale in

---

[11]  With respect to Paragraph 7 of the Hamlin Declaration, Pine State restates that in addition to
selling food through the MSP vending machines it also had a bulk sales program at the MSP.  (Def.'s Resp.
Hamlin Decl. ¶ 7.)  See supra note 5 regarding the parties' dispute concerning the formal and informal
names for the retail outlets of the correctional facilities.

vending machines and, therefore, may be marked "not for individual sale" or "not labeled for individual sale" by the vendor. This means that the particular items are sold by the vendor in bulk to wholesalers such as Pine State for vending machines and bulk sales, but are not intended for normal retail or store sales. The vendors of these food products sell these items to Pine State with full knowledge and approval that Pine State will place the individual items in vending machines and/or sell them in bulk packages. (Def.'s SMF ¶ 19.)

Hamlin responds that the real reason that the manufacturers place the wording "Not for individual sale," or, "This unit is not labeled for individual sale," is because it is against the law to sell these items without nutritional and ingredient information on the packages. (Pl.'s Resp. SMF ¶ 19; Hamlin Decl. ¶ 8.)[12]  He references a letter to him by and executive representative of Kraft that states:

> Dear Mr. Hamlin,
>
> Thanks for taking the time out of your busy schedule to contact us to inquire about our labeling.
>
> The labeling is required by law and is used in situations where smaller units of a particular product are contained within a larger package for sale. Typically, the individual packages are much smaller in size and, as a result, it is not possible to fit all the nutritional and/or ingredient information on the smaller package.  When this happens, federal law requires that the manufacturer inform consumers and others by writing "This item is not packaged/marked/labeled for individual sale" on the package.
>
> Feel free to contact us again if there is anything else we can do for you.

---

[12]     Hamlin cites to Paragraph 8 of his declaration which represents that some of the products in question come across state lines.  (Hamlin Decl. ¶ 8.)  As Pine State points out (Def.'s Resp. Hamlin Decl. ¶ 8), Hamlin has no record evidence for this assertion.  Furthermore, neither party has attempted to explain why this concern in material to the claims advanced by Hamlin.

(Pl.'s Ex. 3.)   He also cites to the Maine food labeling laws requiring nutritional and
ingredient information on packaged food and providing that potentially hazardous food[13]
dispensed through vending machines shall be package in which it was place at the food
establishment or food processing plant at which it was prepared.   (Id. Ex. 4.)   He
references the affidavits of fellow inmates attesting that they purchased single packages
of certain food items through the vending machines at MSP that did not have nutritional
and/or ingredient information on the packages.   (Ricky Block Aff.; Bracy Ashby Aff.;
Andrew Parsons Aff.; Daniel Ballard Aff.)

### *Discussion*

Based on the summary judgment record set forth above, this dispute whittles
down to two factual nuggets: Hamlin has succeeded in generating record evidence that it
costs $3.75 for a four ounce bag of Maxwell House coffee from the vending machines at
MSP and only $2.63 at the MCC and that in its vending machines Pine State sold
microwave popcorn for .75 cents at MSP which was marked, "This item is not packaged
for individual resale."   There is no material dispute in this record regarding what is or is
not sold at what price at the non-vending points of purchase at MSP or MCC.

In his memorandum responding to the summary judgment motion Hamlin does
very little to controvert Pine State's legal arguments as to why it is entitled to judgment
on each count.   Other than his consumer protection count complaining of the failure to
properly label, Hamlin has not cited a single standard by which this court should
adjudicate his claims; nor has Hamlin contested the legal standards identified by Pine
State as applying to each count.   Given his singular focus on the consumer protection
count and language that suggests he is conceding the pricing claims, it would not be

---

[13]       There is no concern about hazardous food in this case.

unreasonable to read Hamlin's responsive memorandum as conceding judgment as to the price-related counts.  (See Mem. Resp. Summ. J. at 3.)

As to the merits, with respect to Hamlin's unfair trade practice act claim (Count I), his complaint pleads that this claim relates to the "inflating, overcharging and price gouging" apropos canteen items, which on this record is only the $1.12 differential in the price of Maxwell House coffee at the MSP.  This count can be construed as falling under 5 M.R.S.A. § 207 and 15 U.S.C. § 45.[14]  Pine State is entitled to judgment on this count because the price differential cited by Hamlin between the two facilities' vending operations did not inflict a substantial injury on Hamlin, see Tungate v. MacLean-Stevens Studios, Inc., 1998 ME 162, ¶¶ 9 -10, 714 A.2d 792, 797; see also cf.15 U.S.C. § 45(n) ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."); Tungate, 1998 ME 162, ¶ 9 n. 16, 714 A.2d at 797 n.16, and because the higher price at MSP did not "induce" Hamlin to purchase something he would not otherwise purchase, Tungate, 1998 ME 162, ¶ 11, 714 A.2d at 797; see also cf. Kazmaier v. Wooten, 761 F.2d 46, 51 (1st Cir. 1985).[15]

The second count of Hamlin's complaint charges Pine State with extortion.  Even if a private individual could bring a private cause of action of this ilk (as Maine criminal laws are not enforceable by private citizens, see 17-A M.R.S.A. § 4-B(1)), there is no record support for the conclusion that Pine State "threatened" Hamlin in any manner whatsoever in an effort to get him to purchase its products, see 17-A M.R.S.A. § 355(2).

---

[14]     The defendants removed this case from state court based upon the federal claim.  Hamlin then filed a motion to amend his complaint to delete the federal claim and a motion to remand the case.  I indicated that Hamlin had leave to file an amended complaint, but I denied the requested remand.  Hamlin never filed an amended complaint, and ultimately at a conference with the parties I ruled that the original complaint remained the operative pleading, in accordance with Hamlin's expressed intent.  (see Docket Nos. 7, 11, & 18.)

[15]     The Maine Consumer Fair Solicitation Act does not apply to sales with a charge of less than $25.00. 32 M.R.S.A. § 4668 (1)(A).

Count III of Hamlin's complaint alleges that Pine State is monopolizing the prison canteen/vending business in Maine. (Compl. ¶¶ 29-34.)  Pine State makes a valiant effort to try and discuss the legal parameters of such a claim.  (See Mot. Summ. J. at 8-9.)  Pine State is entirely correct that this monopolization claim by Hamlin against it has no possible vitality; it is entirely frivolous.

Hamlin's fourth count is a "consumer protection" claim and it relates to the sale of the popcorn packages without a label that states its ingredients and nutritional information.   In his response Hamlin identifies "Maine Food Code 2001" as the governing law and asserts that Pine State's failure to comply with this code violated his consumer protection rights.  (Mem. Resp. Summ. J. at 3.)

> "[W]hether a party has committed an unfair or deceptive act, within the meaning of [the consumer protection act], is a question of fact." Brennan v. Carvel Corp., 929 F.2d 801, 813 (1st Cir.1991) (citing USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 124, 546 N.E.2d 888, 897 (1989)) (emphasis added); see also Pan American World Airways, Inc. v. United States, 371 U.S. 296, 306-07(1963) (meaning of Federal Trade Commission Act term "unfair" must be left to case-by-case determination). A practice is "unfair" if (1) it is "within at least the penumbra of some common-law, statutory, or other established concept of unfairness," (2) "it is immoral, unethical, oppressive, or unscrupulous," or (3) "it causes substantial injury to consumers." Rizzuto v. Joy Mfg. Co., 834 F.2d 7, 8 (1st Cir.1987) (quoting Purity Supreme, Inc. v. Attorney General, 380 Mass. 762, 777, 407 N.E.2d 297, 301 (1980)); see also In re Pfizer, Inc., 81 F.T.C. 23, 61 (1972) (same standard under Federal Trade Commission Act). "A practice may be 'deceptive' ... if it 'could reasonably be found to have caused a person to act differently from the way he otherwise would have acted.' " Kazmaier v. Wooten, 761 F.2d 46, 51 (1st Cir.1985) (quoting Purity Supreme, 380 Mass. at 777, 407 N.E.2d at 301).

Chroniak v. Golden Inv. Corp., 983 F.2d 1140, 1146 (1st Cir. 1993).  As with the unfair trade act claim, there is nothing in this record from which I can draw a reasonable inference that Pine State caused a "substantial injury" to Hamlin by selling the popcorn in

the vending machines without an ingredient/nutrition label.[16]  Furthermore, there is no evidentiary support for the conclusion that the lack of a label (or the expectation that there would be such a label) on the popcorn caused Hamlin to act differently than he otherwise would have acted.

As with Count III, Hamlin's Count V claiming "emotional distress" due to Pine State's actions is entirely without merit and unworthy of discussion.[17]

### Conclusion

For the reasons stated above I **GRANT** this summary judgment motion (Docket No. 20).

### So Ordered.

April 28, 2006                                    /s/ Margaret J. Kravchuk
                                                 U.S. Magistrate Judge

---

[16]      It is possible to imagine that there could be a serious injury to a consumer with serious food allergies as a consequence of a failure to properly label.

[17]      Most recurrent grocery shoppers have had the experience of finding a product, such as a box of cereal or a container of orange juice, selling for one price at a grocery store in one branch of a chain supermarket, say in southern Maine, and discovering that it is either cheaper or more expensive in a branch of the same chain located in another town, say in northern Maine.  Although such a price differential might give a consumer pause to wonder how the company justifies this disparate pricing of the same product, there is not the slightest sliver of doubt in my mind -- even if the consumer is quite emotional when realizing that he or she bought a product at a higher price at one store only to find it cheaper at the next – that this consumer's experience does not generate an actionable claim for emotional distress.

13